### R. J. GRIMES v. THE STATE.

No. 2505. Decided February 25, 1903.

**1.—Local Option—Evidence Sufficient.**

See opinion for evidence stated which is held amply sufficient to support a conviction of violating the local option law.

**2.—Same—Charge of Court.**

On a trial for violating local option, a charge of court does not compel defendant to assume the burden of proof and does not change the reasonable doubt from its proper mission which instructed the jury to the effect that, if they believed from the evidence beyond a reasonable doubt that in pursuance of an agreement between defendant and prosecutor defendant accepted money from prosecutor for which he was to furnish whisky to prosecutor, and did place the whisky where prosecutor could get it, he would be guilty unless he acted as agent for prosecutor and had no interest in the sale; in which latter case he would not be guilty. This charge did not require defendant to prove his innocence beyond a reasonable doubt.

Appeal from the County Court of Midland. Tried below before Hon. E. R. Bryan, County Judge.

Appeal from a conviction of violating local option; penalty, a fine of $25 and twenty days imprisonment in the county jail.

The opinion states the facts.

*Cunningham & Oliver* and *Woodruff & Hughes,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State

DAVIDSON, PRESIDING JUDGE.—This conviction was for violating the local option law, the penalty assessed being a fine of $25 and twenty days confinement in the county jail.

The evidence for the State is that the alleged purchaser, Watson, went to appellant's place of business and sought to buy whisky. Appellant declined to sell, stating that he had none to sell. Watson then told appellant that he was suffering from heart trouble, and wanted whisky, and asked appellant to get him some, and, if he could not do

any better, to order it from Odessa. And witness further testified that he said to defendant to permit him (witness) to find a bottle of whisky about the place. Defendant made no reply. Witness handed appellant 65 cents, which he put in his pocket, and witness walked away. This occurred about noon. About 10 p. m. the same day witness went to defendant's place of business. Defendant at the time was in the rear of the building raffling off a turkey. Witness waited awhile to see appellant, but he remained busy, and witness walked around behind the bar at the front of the building, saw some bottles, and, believing one of them to be for himself, took it and went off with it. It contained a pint of whisky. Witness does not know whether appellant saw him when he got the bottle of whisky. This occurred on November 27th. On December 13th appellant came to witness and expressed surprise to find that his name was on this information, stating that he did not know witness had gotten the whisky until after he was arrested, and, further, that he had credited witness' account at the restaurant with the 65 cents. Defendant was then running a cold-storage, and had been some months before running a restaurant. Witness fully expected to get the whisky, and went back after it, and did get the bottle of whisky, as testified. Appellant never mentioned the matter to witness until after his arrest in this case, and he never delivered or offered to deliver witness any whisky for the 65 cents after witness got the bottle mentioned. On October 14th prior, appellant had shipped whisky by express from Big Springs, and had a United States internal revenue license issued to Clopton & Grimes, which was dated July 19, 1901, and ran from July 1, 1901, until July 1, 1902.

Appellant testified practically as did witness Watson up to the time of receiving the 65 cents. He states that he then went to the room of Charles Clark in the Mims building, and bought of Clark a pint of whisky, and paid him the 65 cents for it which Watson had given him; that he got this whisky from Clark about 4 o'clock in the evening, and as an accommodation to Watson, and made no profit on the transaction; that he gave Clark 65 cents that he got from Watson. Appellant did not see Watson get the bottle of whisky, and knows that Watson must have gotten a bottle of whisky belonging to some one else, because the whisky he got for Watson remained there, and was afterwards drunk by himself and the 65 cents credited on Watson's account at the restaurant. Appellant testified before the United States commissioner at Abilene, in the Federal court, about December 1, 1901, in regard to whisky transactions, but did not tell of this purchase from Clark. He testified to other sales made by Clark in their clubroom, and he says that the reason he did not mention this was because he was not asked about it; that Clark had the whisky in a jug, and that while testifying in his own behalf in the case tried Saturday, prior to this trial, wherein he was charged with selling liquor to Charles Clark, he did not tell what he now testifies, and gives as a reason that he was not asked about the transaction. He further testified that he was in the saloon business be-

fore local option went into effect in January, 1900, and had wine and whisky on hand in the storage room back of Count's business house when Watson asked for the whisky. But, he stated, this was partnership whisky between Dysart and himself. Sometimes Dysart got some of this whisky to drink, and sometimes he did; but he did not get the whisky for Watson out of such stock, but got it from Charles Clark, as stated.

Appellant's books, in which he kept his accounts, were turned over to George Hogg, but they seemed to have been shipped out of the country; and Hogg and appellant differ widely as to the contents of these books. He said the books only showed some charges of cash to Clark, and did not show any credit sales to him; and that he knew at the time he was testifying at Abilene against Clark, but did not tell about it, though he did tell of other transactions in the club. Clark and himself ran the club over his cold storage, and played poker there; and this club consisted of Clark, appellant, and one Fred Lewis, a bricklayer. No one else belonged to the club. His testimony shows that he had decided animosity toward Clark, and was a witness against him at Abilene, and the reason for this was that Clark had made complaints against appellant for selling intoxicating liquor, and these complaints had all been filed before he was taken to Abilene as a witness. He states that he knew of this transaction by Clark at the time he testified at Abilene, but did not mention it.

The witness Hogg's testimony was in direct conflict with appellant's in reference to the books, accounts, charges, debits, etc., and that there were about 100 accounts on the books, cash and goods, and that Clark had an account on said books for both cash and goods, and the accounts related to the restaurant and cold storage. Witness did not know where they were; undertook to find them, and went to the safe where they were kept, and the safe was gone, including the books.

Purcell was placed on the witness stand and testified that he was on Clark's bond for him to appear before the Federal commissioner, and accompanied him to Abilene, and heard appellant testify against Clark. Appellant testified about seeing Clark sell whisky in the clubroom, but did not mention the fact that he bought whisky from Clark in Clark's office on November 27, 1901.

Watson, recalled, testified that after appellant was arrested he did not inform him that he had gotten this whisky from Clark, or mention that Watson got the wrong bottle; simply stated that he did not know Watson had gotten the whisky, and had credited Watson's account at the restaurant with the 65 cents.

Appellant makes two questions: First, the insufficiency of the evidence; and, second, that the charge of the court is on the weight of the evidence, and throws the burden of proof on appellant. We are of opinion that the evidence is sufficient to sustain the conviction. Watson got the whisky, beyond any question. He got it from several bottles of whisky in appellant's place of business. He gave appellant the money

with which to purchase the whisky. Appellant says he turned the money over to Clark in payment for whisky that he got from Clark for Watson. When the information was preferred, he informed Watson that he placed the money to his credit on the restaurant account. These statements are not reconcilable with each other. If appellant had bought the whisky from Clark and turned the money over in payment, he did not have it to place as a credit on the restaurant account subsequently.

The following portion of the charge of the court is criticised: "If you believe from the evidence, beyond a reasonable doubt, that the defendant, at the time he received 65 cents from C. C. Watson, if he did receive 65 cents from the said C. C. Watson, there was an implied agreement that he, Grimes, would furnish said Watson with whisky, and, in pursuance of said agreement, he did place whisky where the said Watson could get it, then he would be guilty, and you will so find and assess his punishment as heretofore instructed; unless you find, on the contrary, from the evidence, that Grimes purchased said whisky from Charles Clark, and that in doing so he was acting as the agent of said Watson in the purchase of said whisky, for the accommodation of the said C. C. Watson, and had no pecuniary interest in said sale, then you will find the defendant not guilty, and so say by your verdict." This charge does not compel appellant to assume the burden of proof; nor does it change the reasonable doubt from its proper mission. The jury were instructed that, if they should believe from the evidence, beyond a reasonable doubt, certain facts, it would constitute appellant guilty; but, on the contrary, if they did not so believe, but believed the facts as stated in the second clause of the charge, they should acquit. We believe this charge is correct, and that it does not shift the burden of proof or require defendant to prove his innocence beyond a reasonable doubt. It required the State to prove his guilt beyond a reasonable doubt; and if the State had not done so, or they should believe the subsequent state of facts existed, the jury should acquit.

No error appearing in the record, the judgment is affirmed.

*Affirmed.*